**JS-6**
**LINK: 12**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-03586 GAF (RZx) | Date | July 15, 2011 |
|---|---|---|---|
| Title | Vaughn Banta v. American Medical Response Inc. et al | | |

| Present: The Honorable | **GARY ALLEN FEESS** | | |
|---|---|---|---|
| Renee Fisher | None | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: | |
| None | None | |

**Proceedings:**       (In Chambers)

**ORDER RE: MOTION TO REMAND**

**I.
INTRODUCTION**

   Three years ago this class action lawsuit, which identified all hourly employees of Defendants American Medical Response, Inc., American Medical Response Ambulance Service, Inc., American Medical Response of Inland Empire, American Medical Response of Southern California, and American Medical Response West (collectively, "AMR" or "Defendants") as putative class members, was filed by Plaintiff Vaughn Banta ("Banta") in the Los Angeles County Superior Court. (Kun Decl., Ex. A [6/23/2008 Banta Compl. ¶ 7].) Although Defendants presumably know how many hourly workers they employ and how much those workers are paid, they contend that it took them three years and a discovery response before they could ascertain that the case was removable. More particularly, they assert that it took that long to determine that the amount in controversy exceeded the $5 million threshold under the Class Action Fairness Act ("CAFA").[1] Accordingly, Defendants recently removed pursuant to the second paragraph of 28 U.S.C. § 1446(b). (Docket No. 1, Not. ¶¶ 44-45.)

   The long delay in bringing this lawsuit to federal court raises an apparently unresolved issue regarding the interplay between the first and second paragraphs of 28 U.S.C. § 1446(b) in

---

   [1] Banta answered a request for admission in which he indicated that the amount in controversy exceeded $5 million. (Kun Decl. ¶ 14, Exs. G-K.) There is no indication that Banta had ever taken a contrary position.

**JS-6**
**LINK: 12**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-03586 GAF (RZx) | Date | July 15, 2011 |
|---|---|---|---|
| Title | Vaughn Banta v. American Medical Response Inc. et al | | |

respect to allegations relating to the amount in controversy. The first paragraph provides that the case must be removed "within thirty days after receipt by the defendant, through service or otherwise, of a copy of the initial pleading. . . ." 28 U.S.C. § 1446(b). The second paragraph provides that "[i]f the case stated by the initial pleading *is not removable*, a notice of removal may be filed within thirty days after receipt by defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper *from which it may first be ascertained that the case is one which is or has become removable*. . . ." Id. (emphasis added). Defendants contend that the complaint was silent regarding the amount in controversy, that they were under no obligation to conduct any investigation to determine whether the case was removable, and that their three year delay was justified and in accord with controlling case law. In short, they contend that a complaint that is indefinite on its face as to the amount in controversy is not removable to federal court. In support, they rely on Harris v. Bankers Life and Cas. Co., 425 F.3d 689 (9th Cir. 2005) and several district court decisions that have followed its lead.

      Defendants' position ignores an important element of removal jurisprudence. Case law recognizes that, even where a pleading is indefinite on its face, a defendant may possess sufficient information allowing it to ascertain that the amount in controversy exceeds the jurisdiction minimum, may remove the action to federal court on that basis, and, if challenged, may present evidence to prove up the existence of removal jurisdiction. Pretka v. Kolter City Plaza II, Inc., 608 F.3d 744, 758-60 (11th Cir. 2010) (CAFA removal); Singer v. State Farm Mut. Auto. Ins. Co., 116 F.3d 373, 376-77 (9th Cir. 1997); Sanchez v. Monumental Life Ins. Co., 102 F.3d 398, 403-04 (9th Cir. 1996); White v. J.C. Penney Life Ins. Co., 861 F. Supp. 25, 26 (S.D. W. Va. 1994). The rule articulated in these cases serves the purpose of assuring an "early resolution of the court system in which the case will be heard." Pretka, 608 F.3d at 759 (quoting 14C Charles Allen Wright, et al., Federal Practice and Procedure § 3731, at 482-85). Such a rule contemplates the elimination of gamesmanship in the ultimate choice of forum.[2]

---

[2] This is a particular concern here. In a related wage and hour class action involving a subset of the AMR employees encompassed within the present class, defense counsel (the same counsel representing AMR in this case) removed the case to federal court upon receipt of a collective bargaining agreement that established the wage rates for the members of that class. (Banta's Request for Judicial Notice ("RJN"), Ex. A [Not. of Removal ¶¶ 17-22].) In light of that earlier determination that the amount in controversy in a related and smaller class action exceeded the $5 million threshold, Defendants' long delay in seeking removal of this case provides some measure of the gamesmanship on display in this litigation. Is the Court supposed to believe that Defendants, who are parties to a collective bargaining agreement, do not know that they have signed the document, do not have a copy in their files, do not know its terms, and, more particularly, do not know what they agreed to pay their employees who are employed under this agreement? Any such contention would be entirely unpersuasive.

**JS-6**
**LINK: 12**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-03586 GAF (RZx) | Date | July 15, 2011 |
|---|---|---|---|
| Title | Vaughn Banta v. American Medical Response Inc. et al | | |

As discussed in more detail below, the Court concludes that where a defendant in the exercise of diligence could readily ascertain, on the basis of information within its (often sole) possession, that the amount in controversy exceeds the jurisdictional minimum, it must remove the action to federal court upon receipt of the complaint even though the complaint may be indefinite on its face as to the amount in controversy. The motion to remand is **GRANTED**.

The Court discusses its reasoning in greater detail below and explains why it concludes that Harris is not controlling under the circumstances of this case.

**II.**
**BACKGROUND**

**A. FILING OF THE PRESENT ACTION**

Banta first filed this putative class action in the Los Angeles County Superior Court against AMR on June 23, 2008. (Kun Decl., Ex. A [6/23/2008 Banta Compl.].) On behalf of all California hourly employees, the complaint states claims for: (1) failure to pay overtime; (2) failure to provide meal breaks or premium compensation for missed meal breaks; (3) failure to provide rest breaks or premium compensation for missed rest breaks; and (4) failure to provide accurate itemized wage statements for the preceding four years. (Id.) As is common with wage and hour class actions, the complaint did not allege the amount in controversy in this lawsuit. (Id.) Substantially the same claims were set forth in Banta's First Amended Complaint ("FAC"), which was filed on August 7, 2008. (Id., Ex. B [FAC].) Like the original complaint, the FAC did not state an amount in controversy. (Id.)

**B. FILING OF THE BARTONI COMPLAINT**

Before Banta brought his lawsuit, Laura Bartoni ("Bartoni"), purportedly acting on behalf of a class of persons employed by AMR as dispatchers, filed a putative class action complaint in the Alameda County Superior Court alleging violations of the Labor Code arising out of (1) failure to pay overtime wages; (2) failure to provide meal and rest periods; (3) unpaid wages and waiting time penalties; and (4) violation of California's Unfair Competition Law, Business and Professions Code § 17200, et seq. (Id., Ex. C [4/16/08 Bartoni Compl.].)

On July 21, 2008, in response to discovery propounded by AMR, Bartoni produced a copy of a collective bargaining agreement ("CBA"), which was entered into by National Emergency Medical Services Association and American Medical Response Northern California.

JS-6
LINK: 12

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | CV 11-03586 GAF (RZx) | Date | July 15, 2011 |
|---|---|---|---|
| Title | Vaughn Banta v. American Medical Response Inc. et al | | |

(Kun Decl. ¶ 5, Ex. D [CBA].) Based on the CBA, AMR claimed that for the first time it was able to ascertain that the amount in controversy in the Bartoni case was over $5 million, and thus removed the action to the Northern District of California, on August 20, 2008, pursuant to CAFA. (RJN, Ex. A [Not. of Removal ¶¶ 8, 23].)[3] Specifically, in the notice of removal, AMR alleged that based on the information contained in the CBA, it was able to determine that "dispatchers' wages range from $13.89 to $32.13 an hour," and that each putative class member would recover "$45,000 were a class to be certified." (Id. ¶¶ 20-21.) Moreover, because the class was composed of more than 265 members, AMR averred that the amount in controversy would exceed $5 million. (Id. ¶ 21.) AMR did not explain why, until production of the CBA, it was unaware of how much it was paying its employees.

Thereafter, AMR filed a motion to dismiss or, in the alternative, to stay the proceedings pursuant to the Colorado River doctrine. (Id., Ex. B [AMR's Motion].) In the motion, AMR represented that the Banta case, which by that time had been filed in the Los Angeles County Superior Court, was a broader state court action that subsumed the claims averred in Bartoni, and included the more narrow proposed class of only dispatchers that were employed by AMR. (Id. at 1.) Further, in support of the motion, AMR also submitted a declaration stating "that during the past four years, the average number of putative class members in Southern California is 2,719 and in Northern California, the average is 2,441." (Id., Ward Decl. ¶ 3.)

Ultimately, the district court in Bartoni remanded the action on June 19, 2009, after concluding that no federal question jurisdiction was present and that CAFA's "local controversy" exception applied in that case. (Kun Decl., Ex. E [Remand Order].)

C. COORDINATED ACTIONS AND THE FILING OF BANTA'S SECOND AMENDED COMPLAINT

After the Bartoni action was remanded, it was coordinated with the Banta lawsuit and a third putative class action, Karapetian v. American Medical Response, Inc., filed in the Los Angeles County Superior Court on November 6, 2009. (Kun Decl. ¶ 9.) These cases were assigned to Judge Freedman in the Alameda County Superior Court. (Id.) Subsequently, a fourth putative class action, Aguilar v. American Medical Response, Inc., which was also filed in the Los Angeles County Superior Court, was coordinated with the aforementioned three cases

---

[3] The Court takes judicial notice of the exhibits attached to Banta's RJN and Supplemental RJN because they are documents in the public record. See Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001) (stating that "under Fed. R. Evid. 201, a court may take judicial notice of 'matters of public record.'") (citation omitted).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-03586 GAF (RZx) | Date | July 15, 2011 |
|---|---|---|---|
| Title | Vaughn Banta v. American Medical Response Inc. et al | | |

on March 11, 2010. (Id. ¶ 10.)

    Thereafter, the court allowed the plaintiffs in the four coordinated cases to amend their complaints in order to avoid overlapping putative classes and claims. (Id. ¶ 11.) As a result, Banta filed his Second Amended Complaint ("SAC") on March 30, 2010. (Id., Ex. F [SAC].) In the SAC, Banta does not aver the amount in controversy and narrows the class to:

> All individuals who are currently employed, or formerly have been employed, as *Field Employees*, as full-time or regularly scheduled part-time, at [AMR], at any time from June 23, 2004 until resolution of this action ("Class Period") in the following California Counties: Los Angeles, San Diego, Orange, Santa Barbara, Ventura, Imperial, Riverside, and San Bernardino.

(Id. ¶ 25) (emphasis added).

**D. REMOVAL OF THE INSTANT ACTION AND PENDING MOTION TO REMAND**

    On April 4, 2011, Banta responded to AMR's First Set of Requests for Admissions, and acknowledged that the amount in controversy in this action exceeds $5 million. (Id., Exs. G, H, I, J, K.) In light of this response, AMR removed the instant action to this Court, invoking jurisdiction under CAFA. (Docket No. 1, Not. ¶ 30.) Pending now before the Court is Banta's motion to remand. (Docket No. 12, Not. at 1.) In sum and substance, Banta contends in the motion that removal was untimely because AMR could have ascertained at the time of service of the initial complaint that the minimum amount in controversy required under CAFA was present in this case. (Mem. at 8.) The Court agrees.

**III.
DISCUSSION**

**A. LEGAL STANDARD**

    **1. CAFA JURISDICTION**

    "[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). The Ninth Circuit "strictly construes the removal statute

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-03586 GAF (RZx) | Date | July 15, 2011 |
|---|---|---|---|
| Title | Vaughn Banta v. American Medical Response Inc. et al | | |

*against* removal jurisdiction." Boggs v. Lewis, 863 F.2d 662, 663 (9th Cir. 1988) (citation omitted) (emphasis added). CAFA establishes special diversity jurisdiction rules for class actions "where the aggregate number of members of all proposed plaintiff classes is 100 or more persons and where the primary defendants are not 'States, State officials, or other governmental entities against whom the district court may be foreclosed from ordering relief.'" Serrano v. 180 Connect, Inc., 478 F.3d 1018, 1020 (9th Cir. 2007) (citing 28 U.S.C. § 1332(d)(5)). Under CAFA, a federal court has diversity jurisdiction over a class action meeting those requirements if "(1) the aggregate amount in controversy exceeds $5,000,000, and (2) any class member is a citizen of a state different from any defendant." Id. at 1020–21 (citing 28 U.S.C. § 1332(d)(2)).[4]

### 2. TIMELINESS OF REMOVAL

Under § 1446(b), a defendant must file a notice of removal either (1) "within thirty days after the receipt by the defendant . . . of a copy of the initial pleading," or (2) "[i]f the case stated by the initial pleading is not removable, . . . within thirty days after receipt by the defendant . . . of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b). The statute contains no provisions for determining when a complaint is or is not removable.

### 3. THE HARRIS DECISION

Defendants rely heavily on Harris, which they contend resolves some of the ambiguities regarding the timeliness of removals. (Opp. at 12-13.) To a great extent it does, but it is distinguishable in that it does not address the amount in controversy problem raised in this case. In that case, Harris had included as a defendant an individual whose presence defeated complete diversity, but who had been dead for a number of years. Harris, 425 F.3d at 691-92. After Harris did not respond to Defendant Bankers Life and Casualty Company's ("Bankers Life") letter "asking whether Harris intended to pursue service against" the individual defendant, Bankers Life removed the case to federal court on the basis of complete diversity. Id. Harris moved to remand on the ground that the removal was not timely; and even after discovering that the individual defendant was dead, he pressed the timeliness argument. Id. at 692. The district court denied the motion noting that Harris's position involved "sharp practice bordering upon a fraud upon the Court." Id. Harris appealed.

---

[4] Here, there is no dispute that the class size is over 100 members, and that the minimum diversity requirement is satisfied. (See Docket No. 1, Not. ¶¶ 31-38.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-03586 GAF (RZx) | Date | July 15, 2011 |
|---|---|---|---|
| Title | Vaughn Banta v. American Medical Response Inc. et al | | |

On appeal, the Ninth Circuit held that "notice of removability under § 1446(b) is determined through examination of the four corners of the applicable pleadings, not through subjective knowledge or a duty to make further inquiries." Id. at 694. Thus, the court noted that "the first thirty-day requirement is triggered by defendant's receipt of an 'initial pleading' that reveals a basis for removal," and "[i]f no ground for removal is evident in that pleading, the case is 'not removable' at that stage." Id. Further, if in fact the initial pleading does not indicate the basis for removal, "the notice of removal may be filed within thirty days after the defendant receives '*an amended pleading, motion, order or other paper*' from which it can be ascertained from the face of the document that removal is proper." Id. (emphasis added).

Lastly, the court in Harris also explained that

> objective analysis of the pleadings brings certainty and predictability to the process [of removal] and avoids gamesmanship in pleadings. Just as important, an objective baseline rule avoids the spectre of inevitable collateral litigation over whether the pleadings contain a sufficient 'clue,' whether defendant had subjective knowledge, or whether defendant conducted sufficient inquiry.

(Id. at 697.)

Harris certainly makes sense in context. There is nothing in the statute suggesting that one defendant must conduct an investigation of the citizenship status of other named defendants, or, as in that case, of the unavailability of the non-diverse defendant, as a condition to asserting its rights under the removal statute. Indeed, there is no way that the unavailability of the non-diverse defendant would be evident in the initial pleading. Thus, to hold that one defendant could lose its opportunity to remove on the basis of information outside its control, and even perhaps known to the plaintiff, would promote gamesmanship of the sort evident in that case. Thus, the statute in such circumstances should be read to permit removal under the second paragraph of § 1446(b). However, where the complaint is indefinite as to the amount in controversy, Ninth Circuit precedent suggests that the first paragraph will apply.

**4. GAUS AND ITS PROGENY**

Despite its discussion of the statutory language, Harris's failure to address circuit decisions concerning the amount in controversy element does not entirely resolve the question of whether and when a particular complaint reveals a basis for removal. Notably, Harris does not discuss cases like Gaus v. Miles, Inc., which contemplate removal on the basis of an indefinite

JS-6
LINK: 12

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-03586 GAF (RZx) | Date | July 15, 2011 |
|---|---|---|---|
| Title | Vaughn Banta v. American Medical Response Inc. et al | | |

pleading so long as the defendant meets its burden of establishing that removal is proper. 980 F.2d 564, 566-67 (9th Cir. 1992). Gaus was cited with favor in Sanchez, where the Ninth Circuit wrote:

> We conclude that the test which should be applied here is that suggested by our decision in Gaus. In Gaus, we held that in removed diversity cases where the amount in controversy is in dispute and where it is unclear from the plaintiff's complaint whether the plaintiff is seeking more than $50,000, 'the defendant bears the burden of actually proving the facts to support jurisdiction, including the jurisdictional amount.' Gaus, 980 F.2d at 566-67 (citing Garza, 752 F. Supp. at 763). . . .
>
> Although we did not explicitly hold in Gaus that a removing defendant must prove the existence of the amount in controversy 'by a preponderance of evidence,' it is clear from our reliance on McNutt that this was our intent. See Gafford, 997 F.2d at 158 (citing Gaus as '*seeming* to apply' the preponderance of evidence standard) (emphasis added). Accordingly, we hold that in cases where a plaintiff's state court complaint does not specify a particular amount of damages, the removing defendant bears the burden of establishing, by a preponderance of the evidence, that the amount in controversy exceeds $50,000. Under this burden, the defendant must provide evidence establishing that it is 'more likely than not' that the amount in controversy exceeds that amount.

102 F.3d at 403-04 (footnote omitted); see also Singer, 116 F.3d at 376 ("Where the complaint does not demand a dollar amount, the removing defendant bears the burden of proving by a preponderance of evidence that the amount in controversy exceeds $50,000."). These cases unequivocally permit a defendant, subject to its obligation to prove up the jurisdictional facts, to remove a case to federal court even though the complaint is indefinite on its face as to the amount in controversy.[5]

If a defendant may, but is not required to remove a case where the amount in controversy

---

[5] The Court recognizes that some district courts have concluded that, in circumstances like those present in this case, the second paragraph applies. See, e.g., Munoz v. J.C. Penny Corp., Inc., 2009 WL 975846, at *1-2 (C.D. Cal. Apr. 9, 2009); see, e.g., Molina v. Lexmark Int'l., Inc., 2008 WL 4447678, at *18 (C.D. Cal. Sept. 30, 2008). Those cases, however, are not controlling and the Court does not find them persuasive. Cf. Durham v. Lockheed Martin Corp., 445 F.3d 1247, 1252-53 (9th Cir. 2006) (removal on the basis of federal officer jurisdiction and noting that the § 1442 removal statute is not to be strictly construed against removal in contrast to § 1441 removal.)

JS-6
LINK: 12

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-03586 GAF (RZx) | Date | July 15, 2011 |
|---|---|---|---|
| Title | Vaughn Banta v. American Medical Response Inc. et al | | |

is not explicitly stated in the removed complaint, that party has a decided advantage. On the one hand, if a defendant is in possession of information suggesting that the amount in controversy exceeds the jurisdictional minimum and it would be advantageous to quickly proceed with the matter in federal court, Gaus and its progeny permit removal. On the other hand, even with such information, Harris supposedly would allow the case to proceed to an advanced stage in state court and then, as in this case, permit removal many years after the commencement of the lawsuit.

The Court thinks it is unlikely that this was what Harris had in mind. Allowing a defendant the option of an early or delayed removal would be inconsistent with a number of policies and principles associated with removal jurisdiction. First, as noted above, the removal statute is to be strictly construed against removal jurisdiction. See Boggs, 863 F.2d at 663. A rule that gives a defendant multiple options for removing a case to federal court tends to expand rather than limit the number of cases that are likely to be removed by allowing the removal window to remain indefinitely open. Second, such a rule would promote rather than reduce gamesmanship. This case provides a notable example. Defendants, who plainly know how many employees they have and how much they pay them, can easily assess whether or not the multiple wage and hour claims, if proven on a class-wide basis, will amount to more than $5 million. It is not credible that they could not ascertain the amount in controversy until they were told that the plaintiff contended that more than $5 million was at stake. Indeed, the evidence discussed below indicates that Defendants have known for years that the amount in controversy in this case exceeded the CAFA jurisdictional minimum.[6] Third, the Pretka case out of the Eleventh Circuit noted the importance of resolving the situs of the litigation at the earliest possible time. 608 F.3d at 759. A rule that allows a defendant to delay the decision to remove for three (or possibly more) years certainly fails that test.

For these policy reasons and because Harris did not expressly address the Gaus line of cases, the Court concludes that, even after Harris, a defendant may be required to remove within 30 days of receipt of the complaint where the allegations of the initial pleading make it evident that the amount in controversy meets the jurisdictional requirement. In other words, the Court

---

[6] It is more than a little ironic that, on the same day that this order is being completed, the Court is conducting a Rule 26(f) scheduling conference in a wage and hour case in which: (1) the complaint contained no statement of damages; (2) plaintiff purported to state a wage and hour class action against Defendant K Mart Corporation; and (3) K Mart Corporation removed the case to federal court under the first paragraph of 28 U.S.C. § 1446(b) and pursuant to CAFA. Musgrave v. K Mart Corporation, CV 11-625-GAF. Musgrave is just one of many such cases removed under similar circumstances.

**JS-6**
**LINK: 12**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-03586 GAF (RZx) | Date | July 15, 2011 |
|---|---|---|---|
| Title | Vaughn Banta v. American Medical Response Inc. et al | | |

concludes that, under Ninth Circuit case law, if a defendant *may* remove the case to federal court within 30 days of receipt of the pleading, then the defendant *must* remove the action or be procedurally barred from removing the case.

**B. APPLICATION**

Here, the initial pleading was indefinite as to the amount in controversy. (See Kun Decl., Ex. A [6/23/2008 Banta Compl.].) Nonetheless, the pleading provided much information regarding the scope of this litigation. (See id.) Banta initially purported to represent a class of all California employees of Defendants during the applicable statute of limitations period. (Id. ¶ 7.) The original complaint further averred that Defendants have a corporate-wide policy of non-compliance with California labor law regarding the payment of overtime wages (time and a half and double time) and the provision of meal and rest breaks. (Id. ¶¶ 19-20.) The complaint further alleged that Defendants failed to pay the accrued premium pay to employees for foregone meal periods. (Id. ¶ 20.) Given that Defendants purportedly know how many persons they employ and how much they are paid, they were on notice that the amount in controversy (whether or not it could be proven) was a very large sum of money. That any reasonable effort to establish the amount in controversy would have established the CAFA jurisdictional basis is supported by the record before the Court.

Defendants, who are represented by the same counsel in all of these wage and hour cases, took a position on the amount in controversy in the Bartoni litigation. In that case, which involved a subset of the class asserted in Banta's case, the following documents were filed:

- [1] AMR's August 2008 Removal Petition in Bartoni v. AMR, which included a sworn statement that the amount in controversy for 265 of the dispatchers within the larger Banta class was in excess of $12 million.[]
- [2] AMR's November 25, 2008 Motion to Dismiss Plaintiff's Complaint Or, In The Alternative, Stay All Proceedings in Bartoni v. AMR, which reiterates that '[Bartoni]'s Complaint covers the same parties and the same claims as Banta.'
- [3] Judge Patel's June 19, 2009 Remand Order in Bartoni v. AMR, which ruled that the amount in controversy for 265 dispatchers (all of whom were also part of the Banta class) met the CAFA threshold for removability.
- [4] AMR's August 24, 2009 Petition for Coordination of Actions and Memorandum in Support, filed in the Banta action in Los Angeles Superior Court, which urg[ed] the California Judicial Council to coordinate the actions because the claims of the putative class in Banta subsume those in Karapetian and Bartoni.'

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-03586 GAF (RZx) | Date | July 15, 2011 |
|---|---|---|---|
| Title | Vaughn Banta v. American Medical Response Inc. et al | | |

- [5] AMR's March 5, 2010 'Omnibus Opposition to Plaintiff's Motions for Leave to File Separate Amended Complaints' filed in the coordinated cases in Alameda Superior Court, which once again alleged that 'the potential putative class of Defendants' dispatchers is subsumed by the broader putative class definitions of Defendants' hourly employees in Banta.'

(Reply at 4-5.)

These documents demonstrate the gamesmanship involved in this case and readily establish that the complaint in Banta made it evident to Defendants that the amount in controversy substantially exceeded the $5 million CAFA minimum. Indeed, it appears that Defendants have been well aware of that fact for several years while the case proceeded on track in state court.

Because they characterize the removal as a second paragraph removal, Defendants mistakenly rely on the proposition that "[t]he record of the state court is considered the ***sole source*** from which to ascertain whether a case originally not removable has since become removable." Peabody v. Maud Van Cortland Hill Schroll Trust, 892 F.2d 772, 775 (9th Cir. 1989) (internal quotation omitted) (emphasis added). Peabody is a "second paragraph" case, not a first paragraph case. See id. It is no doubt true that if a defendant had no obligation to remove under the first paragraph of § 1446(b), something must occur in the state court litigation to trigger the second thirty day clock. Thus, if this were a second paragraph case, the clock would not be triggered by the first three "papers" listed above because they were either filed in or issued by a federal court. (See Banta's RJN, Ex. A [Not. of Removal]; Ex. B [AMR's Motion]); (Kun Decl., Ex. E [Remand Order]). See Peabody, 892 F.2d at 775 (stating as follows: "[the plaintiff's] argument overlooks the fact that, since the earlier Motion for Partial Summary Judgment was filed ***in*** federal court, the Motion could not trigger a right to remove ***to*** federal court. The federal summary judgment papers never became part of the state court record. They were filed simultaneously with [the plaintiff's] Motion to Remand, which the district court granted apparently without ruling on the Motion for Partial Summary Judgment.") (emphasis in original).[7] A similar argument would apply to the fourth and fifth items listed above, because

---

[7] In addition, these documents were not received in this case; rather, they were issued or filed in the Bartoni action. (See Banta's RJN, Ex. A [AMR's Not. of Removal]; Ex. B [AMR's Motion]); (Kun Decl., Ex. E [Remand Order].) This also precludes the Court from finding that these documents triggered the second thirty-day window for removal. See Sweet v. United Parcel Serv., Inc., 2009 WL 1664644, at *5 (C.D. Cal. June 15,

**JS-6**
LINK: 12

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-03586 GAF (RZx) | Date | July 15, 2011 |
|---|---|---|---|
| Title | Vaughn Banta v. American Medical Response Inc. et al | | |

"the 'document that triggers the thirty-day removal period ***cannot be one created by the defendant*** [either].'" Adelpour v. Panda Express, Inc., 2010 WL 2384609, at *4 n.7 (C.D. Cal. June 8, 2010) (quoting Rossetto v. Oaktree Capital Mgmt., LLC, 664 F. Supp. 2d 1122, 1129 (D. Haw. 2009)) (emphasis added).

But, as indicated above, this Court concludes that the timeliness of removal should be assessed under the first paragraph of § 1446(b). This case stands as a clear example of what can happen when a defendant, who may remove under the first paragraph even where the amount in controversy is not stated on the face of a complaint, is allowed to defer the removal decision. The Court finds nothing in Harris to indicate that the kind of tactic employed in this case is to be countenanced. In short, the Court concludes that under Ninth Circuit jurisprudence, in a situation where a defendant may remove under Gaus and its progeny, it must remove within 30 days of the initial complaint or lose its opportunity to litigate its case in federal court. This conclusion, in the Court's view, furthers all of the policy objectives implicit in § 1446(b) and case law construing that statute.

## IV.
## CONCLUSION

Based on the reasons discussed in greater detail above, the Court **GRANTS** Banta's motion to remand. Thus, this case is hereby **REMANDED** to the Los Angeles County Superior Court.

**IT IS SO ORDERED.**

---

2009).